---

### In re O'HARA.

(District Court, M. D. Pennsylvania. June 23, 1908.)

No. 875, in Bankruptcy.

1. BANKRUPTCY—EXEMPTIONS—TIME FOR CLAIMING.

Ordinarily it is sufficient if a bankrupt makes his claim to exemption in his schedules, and an extension of time for filing his schedules also extends the time for making such claim.

2. SAME—RESIDENCE OF BANKRUPT.

A bankrupt who, prior to the institution of involuntary proceedings against him, abandoned his business in Pennsylvania and went with his wife to reside with his parents in another state, while seeking a position to work wherever it might be found, and in fact secured a position in a third state, where he was when his schedules were filed, and to which he subsequently removed his wife and household goods, although he returned to Pennsylvania a year later on obtaining a position there, was not a bona fide resident of that state when his schedules were filed, so as to be entitled to claim exemptions under its laws.

In Bankruptcy. On exceptions to report of W. L. Hill, referee, refusing bankrupt's exemption.

A. Mitchell Palmer, for bankrupt.
F. B. Holmes, for creditors.

ARCHBALD, District Judge. Under ordinary circumstances, it is sufficient if the bankrupt claims his exemption in his schedules, and as that was done here it was in time. Lipman v. Stein, 14 Am. Bankr. Rep. 30, 134 Fed. 235, 67 C. C. A. 17. Nor is it material that he was given ten days extra by the referee within which to file his schedules; the grace accorded him extending to everything which was so covered. The reason given by the referee for denying the exemption cannot, therefore, be sustained. It is contended, however, that the bankrupt was a nonresident at the time of claiming his exemption, and so was not entitled to it. The right is to be determined as of the date

when it was claimed, and, if not a resident of Pennsylvania at that time, the bankrupt must be denied his exemption, even though a resident before and since. The facts with regard to this are as follows:

In the summer of 1906 he was conducting a store at Mt. Pocono, Pa., which he had started in April, having previously been a telegraph operator there; and some time in July or August, having become financially embarrassed, he abandoned his business, leaving it in the hands of two clerks, and going with his wife to his former home, with his parents, at Oswego, N. Y. Shortly afterwards, on August 26th, a domestic attachment was issued against him as an absconding debtor; and this was followed September 10th by the present involuntary proceedings in bankruptcy, in which an adjudication was obtained October 10th following. So out of reach with his former affairs was he during this period, and for several weeks afterwards, that he did not know that the proceedings had been instituted, and it was only with difficulty that counsel, who were supposed to represent him, were able to get in communication with him, so as to prepare and file his schedules and make claim for his exemption. This was due, no doubt, to the fact that he was seeking employment again as a telegraph operator, and was assigned to temporary positions, a few days at a time, here and there, finally landing in Connecticut, where he was when his schedules were filed, and where he remained for nearly a year, sending for his wife, removing their goods from his house at Mt. Pocono, and going to housekeeping in furnished rooms.

Under the circumstances, it is fair to conclude, notwithstanding his present protestations, that when he dropped everything, in the way he did, at Mt. Pocono, and went seeking work wherever he could get it, making it home for himself and wife, so far as he had any, at the home of his parents, although his wife's father was living in the vicinity of Mt. Pocono, he did it without any present intention of returning, or of retaining his hold there. It is true that he did not move the furniture out of his house at Mt. Pocono until about the time that he filed his schedules, when it was sold by the sheriff; but he had no place for them until he settled down in Connecticut. It is also true that he had lodged an application for a position as a telegraph operator with the Delaware, Lackawanna & Western Railroad, for whom he had previously worked, which might lead to his return, as it has recently. But this at best was a mere possibility. Accepting residence, giving citizenship and domicile, as defined in Price v. Price, 156 Pa. 617, 27 Atl. 291, as the place where a person has his true, fixed, and permanent home, to which it is his intention to return whenever absent from it, and that when one is so established it is to be taken as continuing until another has been acquired elsewhere, it is negatived, in the present instance, by the complete abandonment by the bankrupt of the business in which he was engaged, the breaking up of his home, and going with his wife to reside with his parents in Oswego, while seeking work elsewhere, and in his finally settling down and going to housekeeping in Connecticut, where he secured a position; no hold being retained meanwhile on anything in Pennsylvania, manifesting an intention or expectation of coming back here.

The exemption laws of a state are passed for the benefit of its resident citizens, in order that they may not be reduced to utter poverty and become charges on the community. Yelverton v. Burton, 28 Pa. 354; Snow v. Dill, 13 Phila. (Pa.) 138. A bona fide residence is essential to the right. Dock v. Cauldwell, 19 Pa. Super. Ct. Rep. 51; Collom's Appeal, 12 Wkly. Notes Cas. 309. And it does not exist in favor of an absconding debtor. McCarthy's Appeal, 68 Pa. 219. The bankrupt, therefore, had no such residence in Pennsylvania, at the time of claiming his exemption, as entitled him to it, and the referee was right in disallowing it, although not for the reasons given.

His action in refusing it is affirmed.