## Mutual Insurance Company Charter Amendment

KEITEL, Deputy Attorney General, July 5, 1949.—
We have your request to be advised as to whether a Pennsylvania insurance company incorporated as a mutual insurance company other than a mutual life insurance company, which is engaged presently in writing health and accident insurance, may amend its charter so as to become a mutual life insurance company.

The authority for the amendment of the charter of an insurance company is set forth in section 322 of The Insurance Company Law of May 17, 1921, P. L. 682, 40 PS §445, as follows:

"Any stock or mutual insurance company of this Commonwealth may procure an amendment to its charter for the purpose of changing its name, changing the location of its principal office or place of conducting its business, increasing or diminishing the par value of the shares of its capital stock, if any, or changing its purpose or purposes or for any other purpose, by calling a special meeting of the stockholders or members."

That section further provides for the approval of the amendment by a two-thirds vote of the stockholders or members.

Under this statute, the amendment procedure will be available to an insurance company for "changing its purpose or purposes, or for any other purpose". Thus,

it becomes necessary to determine whether this language in the statute will permit the desired change.

Section 201 of The Insurance Company Law, 40 PS §381, permits the incorporation of five *classes* of insurance companies, i.e., (a) stock life insurance companies; (b) mutual life insurance companies; (c) stock fire, stock marine and stock fire and marine insurance companies; (d) stock casualty insurance companies, and (e) mutual insurance companies of any kind other than mutual life insurance companies. Your present inquiry concerns a company in class (e) which desires by amendment to change to class (b).

Section 202 of The Insurance Company Law, 40 PS §382, in setting forth the purposes for which companies may be incorporated, carefully distinguishes the purposes for each class. The purposes for both stock and mutual life insurance companies are set forth in paragraph (a); paragraph (b) relates to fire and marine insurance companies; paragraph (c) enumerates the purposes for which casualty insurance companies may be incorporated, and paragraph (d) authorizes mutual insurance companies of any kind other than life insurance companies to transact only such kind of insurance "as may be transacted by a stock company writing the same kinds of insurance". Thus, a mutual insurance company writing casualty insurance would be limited to those purposes enumerated in section 202(c), supra.

The classes of insurance companies are mutually exclusive and only one class of company can write a given type of insurance. The outstanding exception to this rule is found in the field of health and accident insurance, which is common to both life insurance and casualty insurance companies. Both of these classes of companies may be authorized "to insure against personal injury, disablement, or death resulting from traveling or general accidents and against disablement

resulting from sickness and every insurance appertaining thereto". In addition to this purpose, life insurance companies insure lives and grant and dispose of annuities; whereas, in addition to the health and accident insurance, casualty companies may be incorporated for 12 other purposes.

The distinction between the life class and the casualty class of insurance companies is carefully preserved in other parts of the statute. For example, section 206 of The Insurance Company Law, 40 PS §386, establishes the minimum financial requirements for doing business as an insurance company. Under paragraph (d) thereof, companies organized to insure lives under the mutual plan must have applications for insurance by not less than 400 persons in the aggregate amount of $1,000,000, and must also have the guarantee capital of $200,000. Under paragraph (e) thereof, a mutual casualty company would require 20 policies to at least 20 members in the same kind of insurance upon not less than 200 separate risks; a cash premium must be collected with each application, and these premiums must total not less than five times the maximum single risk assumed. This striking difference between the financial requirements for life insurance companies and casualty insurance companies emphasizes the distinction between these two classes. Moreover, the reserve requirements for these two classes of companies are computed differently: Sections 301 and 311 of The Insurance Department Act of May 17, 1921, P. L. 789, 40 PS §§71, 92.

Section 215 of The Insurance Company Law, 40 PS §405, deals with the examination of a company by the Insurance Commissioner before issuing a certificate of authority to commence business. Paragraph (b) relates to mutual life insurance companies, whereas paragraph (c) relates to mutual companies other than life insurance companies.

Article IV of The Insurance Company Law, 40 PS §§501-615, deals exclusively with life insurance companies, both stock and mutual, whereas article VI, 40 PS §§721-860, covers casualty insurance. It is interesting to note that the provisions regarding health and accident insurance policies are found under the general heading of casualty insurance in article VI(b), 40 PS §§751-764. Article VIII, 40 PS §§911-919, specifically covers mutual insurance companies other than mutual life insurance companies.

When viewed broadly, The Insurance Company Law plainly reveals the legislative intent to maintain throughout the law the distinction between the various classes of insurance companies which may be incorporated thereunder, as set forth in section 201.

Prior to the development of general corporation laws, when charters and amendments to charters were specifically enacted by the legislature, a radical amendment changing the nature of the corporation was not considered binding upon nonconsenting shareholders. In Everhart v. West Chester and Philadelphia Railroad Company, 28 Pa. 339, 352 (1857), the court said:

"Nothing is plainer than that an *alteration* of a charter by the legislature may be so extensive and radical as to work an entire dissolution of the contract entered into by a subscriber to the stock, *as by procuring an amendment which superadds to the original undertaking an entirely new enterprise. . . .*" (Italics supplied.)

In Ashton v. Burbank et al., Fed. Cas. No. 582 (1873), the court said:

"The change in the charter, by which a life and accident company was authorized to transact fire, marine, and inland insurance, *is an organic change of such a radical character* as to discharge previous subscribers to the stock of the company from any obligation to pay their subscription, unless the change is

expressly or impliedly assented to by them. . . ." (Italics supplied.)

In the more recent case of Midland Coöperative Wholesale v. Range Coöperative Oil Assn., 200 Minn. 538, 237 N. W. 624, 111 A. L. R. 1521(1937), the court decided that an amendment to a corporate charter was invalid under a statute which provided that the articles could be amended so as to change the name or title, to decrease or diminish its capital stock or to change the number and par value of shares of capital stock, or "in respect to any other matter which the original articles of incorporation of the same kind might lawfully have contained". The court said:

"The reserved power to amend must be exercised within the limits of the reservation. . . . If the reservation is general and not limited in terms, the reserved power of amendment *does not permit a change so fundamental as to change the nature and purposes of the corporation. It does not comprehend change to such an extent as to make an entirely different kind of corporation.* . . . 14 C. J., p. 188; 7 Fletcher, Cyc. Corporations (Perm. ed.), pp. 886, 887, §3718; 1 Thompson, Corporations (3d ed.) §400; Perkins v. Coffin, 84 Conn. 275, 79 A. 1070, Ann. Cas. 1912C, 1188, and note, 1203. . . ." (Italics supplied.)

The foregoing authorities suggest that the proposed amendment transforming a casualty insurance company into a life insurance company would be an organic change of a radical character and not in accord with the letter or the spirit of section 322 of The Insurance Company Law of 1921. The authority therein conferred upon an insurance company to change its purpose is not broad enough to permit the company to change its class also.

When The Insurance Company Law of 1921 was enacted it superseded the Act of June 1, 1911, P. L.

581, providing for life, health and accident insurance companies, and the Act of June 1, 1911, P. L. 567, providing for casualty insurance companies. Both of those acts permitted the amendment of corporate charters, but obviously charters issued thereunder could not be amended so as to take the corporation out of the statute of incorporation and place it under the other statute. When these acts were codified into The Insurance Company Law of 1921, there was no evidence of any legislative intent to grant to insurance companies a power which they did not theretofore possess, i.e., the power to change from one class to another by amendment.

A study of the corporation statutes of Pennsylvania following the Constitution of 1874 clearly indicates a well-defined policy not to permit amendments except those which were in accord with the purpose of the charter. See the Act of March 31, 1905, P. L. 93, the Act of June 13, 1883, P. L. 122, sec. 4, the Act of May 1, 1876, P. L. 53, sec. 31, In re Pennsylvania Bottling and Supply Co., 6 Dist. R. 530 (1897), and In re Coal and Timber Publishing Co., 15 Dist. R. 571 (1906).

The general language in section 322 permitting the amendment of the charter of an insurance company "for any other purpose" is likewise not sufficient to confer the power to change from one class of insurance company to another by amendment. Section 322 permits an insurance company to change its name, location of its office or place of business, the par value of its capital stock, if any, and its purpose or purposes. There are undoubtedly other similar changes which may be necessary from time to time, particularly for charters granted by special acts of assembly. The general language "for any other purpose" should be limited in its construction to changes of the types thereinbefore enumerated.

The rules of statutory construction aid in this conclusion. In Myers' Petition, 39 D. & C. 712, 715 (1940), the court said:

"Under section 33 of the Statutory Construction Act of May 28, 1937, P. L. 1019, it is provided: *'General words shall be construed to take their meanings and be restricted by preceding particular words.'* Our appellate courts have frequently held that in construing statutes a general word which follows particular and specific words of the same nature as itself takes its meaning from them, and is presumed to be restricted to the same genus as those words, or, in other words, as comprehending only things of the same kind as those designated by them, unless there is something to show that a wider sense was intended: City of Corry v. The Corry Chair Co., 18 Pa. Superior Ct. 271; Dalzell's Estate, 96 Pa. Superior Ct. 467, 472. . . . It follows from the language of the Act of 1915, supra, and the rules of construction applicable thereto, that the expression 'other claims' cannot be construed to include an easement or right of way." (Italics supplied.)

The fact that the mutual casualty insurance company now seeking the amendment in question has been engaged solely in the health and accident insurance business does not alter the general principle hereinbefore discussed. It furnishes a persuasive argument in favor of the granting of an exception by the legislature to a company which seeks by amendment to convert itself into another class in which the same kind of insurance may be written. However, the legislature has not as yet authorized such a transition and we can find no basis for reading such authority into The Insurance Company Law.

Accordingly, you are advised that a Pennsylvania insurance company incorporated as a mutual insurance company other than a mutual life insurance com-

pany, even though it is engaged in writing health and accident insurance, may not amend its charter so as to become a mutual life insurance company.