## Gray *against* The Monongahela Navigation Company.

A copy of the laws published annually by the authority of the legislature, is evidence of the statutes contained in it, whether they be public or private.

An alteration in a charter of incorporation, by which additional privileges are given to the corporation, is not such an invasion of the contract of subscription as will relieve the subscriber to its stock from his liability to pay; although the additional privileges granted may extend the liabilities of the company, and thus incidentally affect the stockholder.

A misnomer of the corporation, in a public notice to subscribers for stock to pay instalments of stock subscribed, is immaterial in an action by the corporation against the subscriber upon his obligation to pay.

A misnomer of the plaintiff, in an action by a corporation, must be taken advantage of by a plea in abatement.

ERROR to the District Court of *Allegheny* county.

The President, Managers, and Company of the Monongahela Navigation Company against James Gray. This was an action on the case.

The declaration claimed from the defendant two instalments of five dollars each on twenty shares of stock, subscribed by him on the books of the Monongahela Navigation Company; setting forth that on the 27th day of July 1836, books were provided (in which defendant subscribed twenty shares) in conformity to an Act of Assembly, entitled, "An Act to authorize the governor to incorporate a company to make a lock navigation on the River Monongahela," passed 31st of March 1836, and the supplements thereto. And that by letters patent, dated the 26th of December 1836, the governor incorporated the company under the name of the President, Managers, and Company of the Monongahela Navigation Company.

Plaintiffs offered Act of Assembly of 31st of March 1836, authorizing the governor to incorporate the company, &c. Defendant objected that this was a private Act of Assembly, of which the pamphlet laws were not sufficient evidence. The court overruled the objection, and sealed a bill of exceptions.

Charter under Great Seal of State, dated 26th December 1836, read.

1839—24th of June, supplement to Act of 31st March 1836, read—name and style shall be "Monongahela Navigation Company."

The defendant offered to prove that the change authorized by the charter as to the height of the dams was prejudicial to the

[*Gray v. The Monongahela Navigation Company.*]

company and to the public, and to the defendant by involving him, together with the company, in expenses not contemplated by the original charter, and would subject the works to imminent danger and hazard.

Plaintiffs objected that the testimony was irrelevant. The court sustained the objection, and sealed a bill of exception.

The court below thus charged the jury :—

This is an action brought to recover two instalments, of five dollars each, on twenty shares of stock subscribed by this defendant. The obligation is within the form prescribed by the Act of Assembly of 31st March 1836 (pamphlet laws, 263) in the following words :—

"We, whose names are hereunto subscribed, do promise to pay to the president and managers of the Monongahela Navigation Co. the sum of fifty dollars for every share of stock set opposite to our names respectively, in such manner and in such proportions, and at such times, as shall be determined by the president and managers of said company, in pursuance of an Act of the General Assembly of this commonwealth, entitled, "An Act to authorize the governor to incorporate a company to make a lock navigation on the river Monongahela."

"Witness our hands this 27th day of July 1836."

It is not denied that the defendant subscribed for the twenty shares of stock. But the defence set up is, first, that the advertisements giving notice that the Board had required the two several instalments to be paid in, did not give the correct corporate name of the corporation; that the notice is to the stockholders of the " Monongahela Navigation Co.," whereas the Act declares that the name, style, and title of the corporation shall be " The president, managers, and company of the Monongahela Navigation Co." This prolix and awkward name was not changed to the " Monongahela Navigation Co." till the Supplement to Act, passed 24th June 1839. Now, it is to be observed that the very Act of Assembly which confers this long name on the corporation in the form presented to be signed by the subscribers to stock, does not give them this name in all its unnecessary length, but directs the promise to pay to " *The president and managers of the Monongahela Navigation Co.*" Nor is there any evidence that there was any other company named the " Monongahela Navigation Co.;" nor is it pretended that the defendant was, or could have been deceived or led into any error by this misnomer of the corporation, or that he or any other person ever imagined that these advertisements referred to any other company.

Such being the case, the jury might well disregard this small mistake as immaterial, even if it were a condition precedent to the defendant's being bound to pay an instalment, that a public notice shall be given in a public newspaper. But " it is not so

[Gray v. The Monongahela Navigation Co.]

written in the bond." The promise is to pay in such proportions, and at such times, as shall be determined by the " president and managers."

The seventh section, which directs notice for thirty days in one or more newspapers in Washington, Green, Fayette, and the city of Pittsburgh, has reference to a penalty of two per cent. per month, and forfeiture of the stock. If this had been an action to exact the penalty, the court would have held the plaintiffs to strict proof of compliance with the Act. But as the action is only on the original contract, and as it is in evidence that the president and managers have determined that two instalments of five dollars on each share shall be paid in, and more especially as there is evidence of a personal demand and refusal to pay by defendant, this defence ought not to avail him.

A second objection has been made, to wit:—That the legislature have made a material alteration in · the charter, which gives the larger stockholders more votes than they had at first. Now, this alteration was not imposed on the corporation, but made at their request, (the request, by the way, of defendant's own agents,) for the purpose of amending a section that was contradictory and obscure, and correcting a palpable blunder. Besides, if this section of the supplement is so injurious to the rights of the defendant, and " *impairs the obligation of a contract*," the objection is suicidal; for if the Act impairs the obligation of a contract, the Act is void, and not the contract.

Upon the whole, I would say that it is not consonant with equity or justice, that after a number of persons, trusting to their mutual subscriptions and good faith, have entered on a scheme of this sort, with an expectation both of public and private benefit, and a part have proceeded in good faith to pay their money, and to incur heavy responsibilities for their common benefit, another portion of the subscribers should be suffered to evade their liability for trifling excuses or technical quibbles, and thus bring great loss and injury on those who have trusted to their promises.

I see no reason why the plaintiffs should not have a verdict on the undisputed facts of the case.

Defendant excepted to the charge of the court.

Errors assigned:

1. The court erred in receiving the evidence stated in the first bill of exceptions of defendant below.

2. In rejecting the evidence offered by defendant below, as stated in his second bill of exceptions.

3. In stating to the jury that the mistake in the advertisement of a call on the stockholders for the instalments was immaterial, and that no public notice was necessary of such call previous to bringing suit.

4. The court erred in stating that they saw no reason why the

[Gray v. The Monongahela Navigation Co.]

plaintiffs below should not have a verdict on the undisputed facts of the case.

5. The court erred in rendering judgment for the plaintiffs below, because no such corporation as "The president, managers, and company of the Monongahela Navigation Co." was in existence at the time of the bringing of this suit, nor for some time before nor since, as appears by the Act of Assembly read by the plaintiffs below themselves.

*Findlay*, for plaintiff in error. By the Act of incorporation, the design, duties and powers of the corporation were expressly defined. Upon the faith of this law and its provisions, the defendant agreed to embark his capital, with the belief that he had made a profitable investment. If by any subsequent act or authority, the object to which his money is to be applied is changed, and that without his consent, he cannot be compelled to pay. 3 *Penn. Rep.* 184. In this case, the Act of 1839 changes a most essential feature in the original Act of incorporation. By the Act of 1836, *Pam. Laws* 262, *sec.* 4, no stockholder shall be entitled to more than ten votes; and by the 8th section, the dams to be erected were limited to the height of 4 feet 6 inches. Whereas, by the Act of 1839, a stockholder to a sufficient amount may have twenty votes, and the dams may be made 8 feet high. By the latter change, the expenditure to be incurred by the Company may be double what the defendant anticipated when he subscribed; and by the former alteration, his voice in determining whether such alteration shall be made is in a measure silenced.

*Williams contra.* The published laws are evidence. 6 *Binn.* 321; 1 *Dall.* 463; 4 *Cra.* 384; 12 *Serg. & Rawle* 203.

The Act is permissive as to the change, and not mandatory, and the offer of the defendant below was in effect to show that the Act of the Legislature was prejudicial. If it turns out to be so, the managers will not avail themselves of the privilege, and thus the defendant might avail himself of a change which will never be made.

The variance in the notice to stockholders was not such as to mislead, and that in the name of the party plaintiff could only be taken advantage of by plea in abatement.

The opinion of the Court was delivered by

GIBSON, C. J.—It has long been settled by decision and practice, that the copy of the laws published annually by the authority of the legislature, is evidence of the statutes contained in it, whether they be public or private; and this disposes of the first bill of exceptions to evidence.

The second brings up the only material point in the cause; but the exception cannot be sustained. A grant of additional privi-

leges to a corporation, has certainly not been thought an invasion of the contract which exists between it and subscribers to its stock.   It is alleged to be so, in this instance, because the grant of a privilege to raise the dams higher than was allowed by the original Act, might lead to a greater expenditure to compensate injuries to the riparian owners by flooding their lands, than was contemplated when the defendant became a stockholder.   But what was there in the contract of subscription to forbid the acceptance of such a grant?   The contract remains unchanged by it, though its consequences may be varied : it was to pay so much the share, and so it is yet.   But the constitutional restriction of the power of the states to enact laws which impair the obligation of a contract, has regard to direct and not consequential invasions of it.   Thus in *Mason* v. *Haile*, (12 *Wheat.* 370), it was considered that a state has a right to regulate or abolish imprisonment for debt as a part of the remedy for enforcing a debt, though by doing so it undoubtedly takes away one of the incidental advantages of the contract which may have been in the view of the creditor when he entered into it.   So also in *Watson* v. *Mercer*, (8 *Peters* 88), an Act to confirm a title imperfect under the recording laws, was held good.   That Act, however, tended more properly to establish the obligation of a contract than to impair it; yet it certainly varied the consequences of the contract, such as it was.   In *The Providence Bank* v. *Billings*, (4 *Peters* 514), the purpose of a corporation, however, was said to be no more than to give individuality, and a right of succession to a body of men, and not to exempt them from the burdens that were common to them at first; and hence it was held that a state may constitutionally tax the property of a bank previously incorporated by it, though such taxation undoubtedly affects the consequences of the subscriptions by decreasing the rate of the dividends.   In like manner, it was held, in *The Proprietors of the Charles River Bridge* v. *The Proprietors of the Warren Bridge*, (11 *Peters* 420), that an Act to incorporate a company to erect a bridge so near the bridge of another incorporated company as injuriously to affect it, is within the legitimate power of a state, though such an exercise of it necessarily takes away a part of the fruits of the contract by reducing the amount of the tolls.   Thus we see that the principle is emphatically applicable to a contract with a corporation, which, though technically a private one, has been created for a public object.   Mr Justice Story remarked, in delivering the opinion of the court in *Terrett* v. *Taylor*, (9 *Cra.* 52), that in respect to *public* corporations which exist only for public purposes, such as counties, towns, cities, and the rest, the legislature may, under proper limitations, have a right to change, modify, enlarge, and restrain them, securing, however, the property for the use of those for whom, and at whose expense, it was originally purchased.   Is not a corporation to improve the navigation of a river which is a part

of the public domain, though it be authorized to demand tolls in compensation of its outlay, a public one? If it be not, a bank of the United States for the fiscal purposes of the Federal Government, which has been authorized to discount notes and deal in exchange on its private account, would not be a public corporation, and it would consequently be beyond the constitutional power of Congress to grant such a bank a charter. In *Irvin* v. *The Turnpike Company*, (2 *Penn.* 466), it was ruled that the benefit which would incidentally result to the property of stockholders near the proposed route of a turnpike-road does not enter into their contract of subscription as a part of its consideration; and that they engage in the enterprise necessarily subject to the power of the legislature to change the route for the public good, when the contrary has not been stipulated in the Act of incorporation. Now, an Act to incorporate a company for purposes of slack-water navigation, is as essentially of a public nature, as is an Act to incorporate a company for the purpose of making a turnpike-road. In this instance, then, what has the Legislature of Pennsylvania done? It has not pretended to take away any corporate franchise, or to impinge upon any right before granted. That is not pretended. On the contrary, it has enlarged a corporate privilege. But the exercise of it, it is alleged, may plunge the company into an expense not originally contemplated. What of that? The defendant is not bound to contribute to it beyond the amount of his original subscription and as to that, his contract remains the same. But it is said that by taking off the limitation of the company's expenditure, the Legislature has altered its power to incur responsibility for greater damages than it otherwise could have done. In that lies the fallacy. The Legislature has not made it incumbent on the company to use the additional privilege granted to it; but has left the use of it to its discretion. It may, in fact, never use it, and whether it shall do so, will depend on the volition of the defendant's corporate agents, the president and managers, by whose acts he is necessarily to be bound as his own, even in the acceptance of a modification of the charter for the public good, provided it do not extend to a change of the structure of the association, as was attempted in the *Indiana and Ebensburg Turnpike* v. *Phillips*, (2 *Penns.* 184), where the original corporation was broken up, and the subscribers to its stock were apportioned according to an arbitrary line of demarcation as regarded their residence, and transferred to the one or the other of two distinct corporations erected on its ruins. To do that, was declared to be beyond the legislative power. On any other principle than that of *Irvin* v. *The Turnpike*, already quoted, no improvement in the plan of a public work once begun, could be made without cutting loose the corporators from their subscriptions, and resolving the corporation into its primitive elements. Such improvements or alterations are frequently made, and sub-

[Gray v. Monongahela Navigation Co.]

scriptions to the stock are consequently in subordination to the practice. At all events, it is sufficient for the argument that the constitutional restriction has been restrained by the ultimate tribunal to interference directly with the terms of the contract, and not merely with its incidents.

The mistake of the corporate name in giving notice of the call on the stockholders for their instalments, was immaterial. Notice of such a call is necessary only to subject them to the penalty of two per cent. a month for default of payment; not to found an action for the principal, which may be demanded on the foot of the call without notice of it. Here, the action is for the two instalments due, while a demand of the penalty is waived.

The plaintiff has sued by the original corporate name, which it bore at the date of the contract, and not by the name, modified by a supplemental Act, which it bore at the inception of the suit; but in the state of the case presented by the record, the variance is immaterial; for, to take advantage of it, it must be pleaded in abatement, as every other misnomer must. It was, indeed, said by Chief Justice Treby, in *Britton* v. *Gradon*, (1 *Lord Raym.* 119), that a judgment against a corporation by a wrong name, is void; on which it is remarked in *Kyd on Corporations* 285, that "it is indeed true that in most of the cases where the question of misnomer of a corporation has been agitated, it has arisen on a special verdict; but I apprehend that where a corporation have taken no advantage of a variance from their name, either by plea or at the trial, they cannot arrest the judgment on that account." Surely the rule must be the same where the corporation is plaintiff. It seems, however, that if the variance be apparent in the entry of the judgment, it may be error; as in *Healings* v. *The Mayor, Commonalty and Citizens of London*, (*Cro. Car.* 574), where the judgment was that the mayor, commonalty, and citizens should recover their debt and costs to the same mayor and commonalty adjudged, (omitting the word citizens) it was held to be error. But as there is no such discrepance in the record before us, which contains but one designation of the plaintiff throughout, there is no room in the case even for this sharp distinction; and the exception that the court ought not to have rendered judgment on the verdict, is not sustained.

Judgment affirmed.