By the Court, Nelson, Ch. J.
The main objection taken to a recovery in this case is, that the plaintiffs are seeking to enforce the performance of a different contract from that into which the defendant entered when he subscribed for the stock; in other words, that the defendant never assented to the contract upon which the action is fomided.
The original charter conferred upon the company all the usual and necessary powers for locating and constructing a railroad from the town of Hartford to the city of New-Haven. The ten shares subscribed for by the defendant were expressly taken upon “ the terms, conditions and limitations” mentioned in the charter. And such would doubtless have been the legal effect of the subscription had no reference to the charter been made in it. The contract thus entered into was as specific and definite as the charter of the company could make it; and the meaning and intent of the parties cannot therefore be mistaken. It was a contract to take stock in an association incorporated for a particular object, having such limited and well defined powers as were necessary to the accomplishment of that object. The defendant assented to the object by his subscription, and thereby agreed that his interest should be subject to the direction and control of the powers thus expressly conferred, but nothing more.
Since entering into this contract, the plaintiffs have procured an amendment of their charter, by which they have superadded to their original undertaking, a new and very different enterprise— and, for aught that can be known, a very hazardous one—with the necessary additional powers to carry it into effect. Instead of *386 confining their operations to the construction and management of their rail-road, between Hartford and New-Haven, they have undertaken to establish and maintain a line of water communication by means of steamboats, at an expense not to exceed $200,000 ; to all which, it is insisted, the contract of the defendant has become subject,- without his approbation or assezit.
It is most obvious, if incorporated companies can succeed in establishing this sort of absolute control over the original contract entered into with them by the several corporators, there is no limit to which it may not be carried short of that which defines the boundary of legislative authority. The proposition is too monstrous to be entertained for a moment. Corporations possess no such power. Indeed they can exercise no powers over the corporators beyozid those conferred by the charter to which they have subscribed, except on the condition of their agreement or consent. This is so in the case of private associations, where the articles entered into and subscribed by the members are regarded as the fundamental law or constitution of the society, which, can only be changed by the unanimous voice of the stockholders. (Livingston v. Lynch, 4 John. Ch. Rep. 573; Coll. On Part. 641.) So here, the original charter is the fundamental law of the association—the constitution which prescribes limits to the directors, officers and agents of the company not only, but to the action of the corporate body itself— and no radical change or alteration can be made or allowed, by which ziew and' additional objects are to be accomplished or responsibilities incurred by the company, so as to bind the individuals composing it, without their assent.
The question has been the subject of consideration in Massachusetts and Pennsylvania, and in each the courts have not hesitated to maintain the inviolability of the contract as originally entered into, denying to the company the power of altering it essentially and of binding the subscribers who have not given their assent. In the case of The Middlesex Turnpike Corporation v. Locke, (8 Mass. Rep. 268,) the suit was brought upozi a sizbscription cozztract for stock, by which the defendant agreed to take one share and to pay all assessments made upon it. *387 The ground of defence which prevailed was, that the location of the turnpike road had been changed by an act of the legislature, after the defendant’s subscription, the act having been passed at the instance of the corporation; and that the defendant had never assented to the alteration. The court said: “The plaintiffs rely on an express contract, and were bound to prove it as they allege it. Here the proof is of an engagement to pay assessments for making a turnpike in a certain specified direction. The defendant may truly say, non hcec in feeder a v'eni. He was not bound by the application of the directors to the legislature for the alteration of the course of the road, nor by the consent of the corporation thereto.” The same principle was recognized and admitted in the case of The Indiana & Ebensburgh Turnpike Co. v. Phillips, (2 Penn. Rep. 184.)
8 I do not deny that alterations may be made in the charter by the procurement of the company, without changing the contract so essentially as to absolve the subscriber. Such would be the case, perhaps, in respect to mere formal amendments, or those which are clearly enough beneficial, or at least not prejudicial to his interests. A modification of the grant may frequently be advisable, if not necessary, in order to facilitate the execution of the very object for which the company was originally established ; and I admit there are intrinsic difficulties in the way of laying down any general rules by which to distinguish between the two kinds of cases. Bach must depend upon its own circumstances, and be disposed qf with due regard to the inviolability belonging to all private contracts.
Some of the cases which have occurred exemplify the difficulties attending the question. In Irvin v. The Turnpike Co., (2 Penn. Rep. 466,) it was held that a benefit which results to individual property by the location of the road, did not, in contemplation of law, enter into the consideration of the contract of subscription. Hence, it was there decided that the subscriber was bound, notwithstanding a change in the location of the road made by an act of the legislature against his remonstrance; and this though the change was obviously to his prejudice in point of fact. The decision, it will be perceived, is contrary to *388 the case before referred to in Massachusetts. The court, moreover, were not unanimous, Rogers and Kennedy, Js. having dissented. In Gray v. The Monongahela Navigation Co., (2 Watts & Serg. 156,) the same learned court held, that an alteration in the charter, by which additional privileges were granted to the corporation, was not such a violation of the contract of subscription as would relieve the subscriber, although the additional privileges might extend the liabilities of the company and thus incidentally affect him.
I refer to the last two cases as affording a very full and able examination of the subject, without intending, at this time, to assent to their conclusions or to all the reasonings of the learned chief justice who delivered the opinions. In each of them, however, the general principle before asserted in The Indiana & Ebensb. Turnpike Co. v. Phillips is recognized, viz. that thee alteration by the legislature may be so extensive and radical as to work a dissolution of the contract; but an effort is made so to modify and regulate the application of the principle as to admit of improvements in the charter, useful to the public and beneficial to the company, without this consequence.
In the case before us, the change in the powers and purposes of the plaintiffs’ company has been so -extensive as to preclude us from sanctioning- a recovery upon the defendant’s subscription, unless we are prepared entirely to abandon the principle above stated and to declare that the interests of subscribers shall be subject to the will and pleasure of a majority of the stockholders.
Judgment for the defendant,