*Twenty-first Judicial District.*

## In the Court of Common Pleas of Schuylkill County.

## THE LYCOMING FIRE INSURANCE COMPANY
### v. RUCH & EVANS.

1. A judgment entered by a mutual insurance company against the defendants, members of the corporation, for the unpaid balance of their premium note, under the provisions of the act of 26th July, 1842, on filing a memorandum, as required by the act, in the prothonotary's office, is valid, and execution may issue thirty days after demand and refusal, for the amount of the assessment, with interest thereon.

2. Premium notes of members are assets of the company for the payment of losses, and they may be assessed to pay cash policies.

3. An acceptance of a supplement to a charter is necessary to give it vitality. This may be done either by a formal vote of the board, or by the exercise of the powers and privileges contained in the supplement.

4. Grants beneficial may be presumed to be accepted, without express words. The renewal of the policy of insurance by the defendants, is an indorsement of a supplement previously passed, and a waiver of all objections to it.

Opinion of the court, delivered May 27, 1872, by

WALKER, J.  This (as amended) is a rule to show cause why the judgment in the above case should not be vacated and execution be stayed. The facts are as follows :

The defendants, on the 31st March, 1871, took out a policy, No. 115,406, for $1000 in the Lycoming Fire Insurance Company for five years, on a dwelling house in Pottsville, and deposited with the company their premium note of $150, on which $12 were paid before the above judgment was entered.

On the 8th of October, 1871, the great fire in Chicago took place. The plaintiff had previously insured property in that city, amounting to $475,000, in the burnt districts, upon the cash basis, under the act of May 1st, 1861.

On the 15th January, 1872, they filed a statement of losses in the prothonotary's office. They had on the 19th October previous made an assessment (No. 29) on the premium notes of the unexpired policies.

On the 8th December, 1871, a notice of the assessment was sent to the defendants, and upon their refusal to pay the amount assessed, four-fifths of which was from losses on cash policies, a judgment was entered for the unpaid balance of the note, and execution was issued for the amount of the judgment.

Upon application of defendants, the above rule was entered and argued.

The reasons urged for vacating the judgment and staying proceedings are,

1st. That the plaintiff had no authority legally to enter the judgment.

2d. That no execution can issue until the requirements of the act are strictly complied with.

3d. That the assessment was irregular.   The rule was amended from opening the judgment to vacating it, "which are two entirely different things."   Breden *v*. Gilliland, 17 P. F. S. 34.

" The opening of a judgment by the court is discretionary and not reviewable."   Kalbach *v*. Fisher, 1 Rawle 323 ; Catlin *v*. Robinson, 2 Watts 373 ; Eldred *v*. Hazlett, 2 Wright 16 ; Cochran *v*. Eldridge, 13 Wr. 365.

The supreme court have said in Breden *v*. Gilliland, 17 P. F. Smith 34, " that no court has power to strike off a judgment regular on its face."

" If there is any case in which a court may strike off a judgment, it must be a very special case, as of fraud, perjury, or cancelled bond, or some case where the facts are admitted or established."   Humphreys *v*. Rawn, 8 Watts 78.

How far the power of a court of chancery extends to *vacate* a judg¬ ment, it is unnecessary for the purposes of the case to inquire ; the point is discussed in Banning *v*. Taylor, 12 Harris 289.   The main questions are raised by the objections of the defendants, which we purpose now to consider.

1st. Had the plaintiff any authority to enter up this judgment against the defendants ?

It is contended that a judgment cannot be entered without warrant of attorney to confess judgment, as provided for by the 28th section of the act of the 24th February, 1806 (Purdon's Dig. 577, pl. 32), and that the entry of judgment without such authority is an infringement upon the right of trial by jury, which is guaranteed by the constitution to every citizen of the commonwealth.

The entry of this judgment is by virtue of the act of 1842, and so far as members are concerned, equal in validity to the act of 1806, if constitutional, and superior to it, if in conflict with it, because, being the latest enactment, it repeals by implication all former laws inconsistent with it.

But this act of 1842 these defendants have agreed to abide by, when they accepted the policy of insurance.   The words of their contract are

"*And it is also agreed that this policy is made and accepted subject to, and in reference to the terms and conditions of the act of incorporation and by-laws of said company.*"

One of the terms is that judgment may be entered by filing a memorandum in the mode and manner prescribed.   The rule is well settled, that a policy of insurance with its clauses, conditions, and stipulations, is the law of the insurer and insured.   West Branch Ins. Co. *v*. Helfenstein, 4 Wr. 289 ; Susquehanna Ins. Co. *v*. Perrine, 7 W. & S. 348 ; Weisenberger *v*. Harmony Fire Co., 6 P. F. S. 442.

The act clearly points out the mode and manner of entering the judg-

ment, and the record shows that its requisitions have been complied with. But how does this act of assembly which all the members have contracted to be governed by, infringe upon the right of jury trial?

A man in all civil proceedings may waive this right; he may even do so in criminal cases, where every right is carefully and scrupulously preserved. On an indictment for misdemeanor or felony, he may, without the intervention of a jury, plead guilty and be sentenced, and yet this is not an infringement of his constitutional rights, simply because he agreed to it.

If a judgment is fraudulently entered, or the limit of the agreement is transcended, equity will intervene and afford him relief.

The plaintiffs have referred to the act of 28th February, 1835 (Purdon's Dig., 939, pl. 43), which authorizes the commissioners to file a certificate in the prothonotary's office, showing the amount of the duplicate due and unpaid by collectors of taxes, which certificate it is provided, shall have the force and effect of a judgment from such entry, and execution may be issued thereon for the collection of the same.

In both acts the judgment is entered upon filing the certificate or memorandum, unaccompanied with a warrant to confess judgment, and in principle they are similar. So also under the 16th section of the act of 11th April, 1799 (3 Smith's Laws 398), the treasurer is empowered to file a transcript of the balance due by delinquent collectors, which transcript operates as a judgment.

And as the supreme court have affirmed the proceedings under this act, in the case of the Commissioners *v.* Henry, 3 Pa. Rep. 26, that decision may be considered as settling the question.

2d. As to the execution it is urged:

1st. That the act of May 1st, 1861, relative to cash policies, is a departure from the purposes and objects of the company as a mutual insurance company, and as the record does not show that this act was ever accepted by the corporation or the defendants it cannot bind them.

The cash branch was a privilege conferred upon the corporation by the act of 1861; it was so regarded by them, for it reduced the assessments of the members. It can scarcely be considered as a departure from the object of their incorporation, for it had been successfully engrafted upon the mutual system in Massachusetts, New York, and other States for years, and the decisions of the courts have again and again sustained the practice of assessing premium notes to pay cash or stock policies. Cooper *v.* Shaver, 41 Barbour 151; New England Mutual Co. *v.* Belknap, 9 Cush. 104.

Besides, the defendants knew of this act of assembly when they became members, "for ignorance of the law excuses no man," and a copy of the laws published annually by the authority of the legislature, is evidence of the statutes contained in it, whether they be public or private.

Gray *v.* Monongahela Navigation Co., 2 W. & S. 156 ; Biddis *v.* James, 6 Binney 321 ; Thompson *v.* Musser, 1 Dallas 463 ; Young *v.* The Bank of Alexandria, 4 Cranch 384; Kean *v.* Rice, 12 S. & R. 203.

Even if we regard the defendants as old members of the company, the renewal of their policy was an endorsement of the charter of the company, for if they intended to object to any part of it, they should have done so *then,* and having taken the chances of the gains accruing from the cash branch, they are estopped from objecting to the payment of the losses incident thereunto.    Fell *v.* McHenry, 6 Wr. 41.

It is urged that the defendants did not accept of the act of 1861, and therefore cannot be affected by its provisions.

An acceptance of a grant is no doubt necessary to make it operative, and "a majority binds a minority."    Com. *v.* Jarrett, 7 S. & R. 460.

The acceptance of the members is shown in the action of the board of directors acquiesced in by the company ; 1 Greenleaf, 70, and they may accept of the provisions of the act either by a direct and formal vote, or it may be shown by implication from the acts of omission and commission of the members of the corporation, and the exercise of corporate power under it.    Angell & Ames on Corporations, §§ 83, 238.

Grants beneficial may be presumed to be accepted, and an express acceptance is not necessary.    Charles River Bridge *v.* Warren, 7 Pick. 344.

Their silent acquiescence in its provisions is sufficient to establish assent.    Com. *v.* Cullen, 1 Harris, 139.    The complaint here is that the company did use and exercise the powers, and that fact is sufficient to establish their acceptance.

But this objection is not open to the defendants.    By taking their policy they waived all objections to its character. Citizens' Insurance Co. *v.* Sodwell, 8 Allen, 217 ; Traders Mutual Co. *v.* Stone, 9 Allen, 485.

And having previously reaped the benefits, they cannot question its acceptance.    Fell *v.* McHenry, 6 Wr. 41.

3d. It is further objected, that an assessment such as the law requires, must be made of actual losses, and not from an estimate of them, and that the statement shows the assessment was made for more than is required to pay these losses.

It is sufficient to say that the assessment (No. 29) was made on information received by the board, and in good faith, and upon an adjustment and settlement of the losses there is but a small per centage in the difference upon the aggregate amount.

The excess in the treasury, the record shows, is $138,261.54, and as the monthly losses average between $40,000 and $50,000, there should be a contingent fund to pay debts and expenses, until the next assessment, and this excess is not unreasonable, "for an insurance company need not after every loss compute an assessment, but may approximate to it as near

as possible." New England Ins. Co. *v.* Belknap, 9 Cush. 140. And an assessment made in good faith and substantially correct, is binding. Marblehead Ins. Co. *v.* Underwood, 3 Gray, 310. "So an assessment based upon computation of losses from month to month, is valid." Jones *v.* Session, 6 Gray, 288.

The company being solvent, the balance enures to the benefit of the members. Were they insolvent, then the assessment should be made for only so much as will pay losses and expenses.

It is alleged that the statement of 10th October, 1871, as filed in the prothonotary's office previous to issuing execution, is insufficient. But upon examination we think it is a substantial compliance with the requirements of the act.

The conclusion arrived at in construing these acts of assembly, is in accordance with the current of decisions of this and other States.

If the law were otherwise there would be great injustice done to the property holders in Chicago and other places, who are insured in this company, and paid their money in good faith, upon the obligations of the company; for if the money be not raised by *pro rata* assessment on the premium notes of the members which constitute their capital, there is no other way of paying the debt, and the company must become insolvent, as the money received on cash policies has already been exhausted.

Besides this, we would be wiping out an act of assembly for no sufficient reason (certainly not on any constitutional ground), and we would be nullifying the contract the members deliberately made for their own benefit in case of fire ; *the obligations of all the members being the security of each individual member.*

The law is not so unjust or so unreasonable as to do any such thing.

Execution has been issued for the full amount of the balance of the premium note. Can this be done ?

By virtue of the 9th section of the act of 1838, it is provided that the company may have execution as set forth in the 6th section. The 6th section is repealed by the 12th section of the act of 26th July, 1842, and supplied by the 11th section of that act. Execution can only issue in a case like this by virtue of the last recited section, and by reference to it we find that ( after the requirements of the section are complied with) execution may be had for so much as by virtue of the provisions of this act (the act of 1842) may be due and demandable.

*What then was due and demandable for which execution may issue ?*

Strictly speaking, there is no sum due and demandable, by that act, though the section does give a lien for the whole amount unpaid of the premium note, and if the Legislature intended this unpaid balance of the the note should be collected, they would have said so in expressed terms. We cannot infer that they meant it. Nothing can be taken by intendment.

But as courts of justice are required to give the act a reasonable con-

struction, the words *"due and demandable,"* must mean the amount due as assessed, and which was demanded of defendants.

The rule is therefore discharged, and the execution is restricted to the amount of assessment, No. 29, with interest thereon.

Messrs. *Hazen, Strouse* and *Cumming,* for plaintiffs ; Messrs. *Linn Bartholomew* and *J. W. Ryon,* for defendants.