# Freeland *versus* Pennsylvania Central Insurance Company.

1. In an action by a mutual insurance company for assessments upon premium notes given by a policy holder, the defendant contended that the contract should not be enforced against him, because the act conferring upon the company the power to insure was unconstitutional : *Held*, that the defendant, as a member of the company, could not make this defence : *Held*, *further*, that the validity of the charter could not be thus inquired into collaterally : *Held*, *further*, that defendant could not make defence on the ground that the contract was ultra vires, by reason of want of power to insure, as this was tantamount to questioning the validity of the charter.

2. *It seems*, that a corporation contract is ultra vires when it is beyond the powers conferred, but when the power is conferred, whether rightfully or not, and the contract in question is within the very letter of the act, it cannot be said that it was ultra vires within the proper meaning of that expression.

3. Where suit has been brought in the wrong name, advantage must be taken thereof by plea of misnomer in abatement, and where no such plea has been made and defendant has gone to trial under the general issue, it is too late to make such a defence. The want of a charter must also be so pleaded.

4. The decree of the court changing the name of the corporation cannot be impeached by this defendant in this collateral proceeding.

5. The special remedy provided in the charter of this company did not preclude it from suing at law.

6. Where the representations of the agent of the company were carefully reviewed by the court and left to the jury with proper instructions, and they found against defendant, this court will not review their act.

May 21st 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

. Error to the Court of Common Pleas of *Dauphin county :* Of May Term 1879, Nos. 205 and 206.

These were actions of assumpsit brought by the Pennsylvania Central Insurance Company against James Freeland, to recover assessments upon notes, alleged to be premium notes, given by defendant upon his application for insurance of his real property against loss by fire.

The Act of May 5th 1854, Pamph. L. 563, incorporated the Lykens Valley Mutual Fire Insurance Company, and granted it powers as a fire insurance company. The Act of March 27th 1869, Pamph. L. 570, enlarged these powers of the Company, for the purpose of insuring live stock.

On November 27th 1869, the court of Schuylkill county incorporated the Pennsylvania Cattle Insurance Company, located at Pottsville, enabling said company to insure live stock. The Act of May 10th 1871, Pamph. L. 670, granted to the Pennsylvania Cattle Insurance Company 'the same rights, powers, &c., as the Lykens Valley Mutual Fire Insurance Company, under the above Acts of May 5th 1854, and March 27th 1869.

On July 17th 1871, a petition was presented to the court of

[Freeland *v.* Pennsylvania Central Ins. Co.]

Schuylkill county to amend the charter and change the name of the Pennsylvania Cattle Insurance Company to the Pennsylvania Central Insurance Company, and on September 4th 1871, a decree was entered of record changing the name.

On October 27th 1871, the auditor general was notified of the change in name as required by the Act of April 20th 1869, Pamph. L. 82, Purd. Dig. 285.

On December 27th 1871, an Act of Assembly was approved (Pamph. L. 1872, p. 1385), entitled "An Act to incorporate the Pennsylvania Cattle Insurance Company." The first section provides that the company of that name, incorporated by the Schuylkill Court of Common Pleas, November 27th 1869, "shall possess all the powers and privileges, and be subject to all the restrictions and limitations which are hereby granted to and imposed upon it." The second section then provides that the corporators named, and their associates, "shall be a corporate body by the name of 'The Pennsylvania Cattle Insurance Company.'" Twelve succeeding sections regulate the management of the company in the exercise of the only power thus far conferred, viz.: of "making contracts of insurance against loss or damage by death, theft or accident." The fifteenth section then provides "the said company shall have the power to connect an additional branch of insurance, with the privileges hereinafter specified, which shall be called by the name, style and title of 'The Fire Insurance Branch of the Pennsylvania Cattle Insurance Company,' and by that name have perpetual succession, sue and be sued, &c."

The sixteenth section empowers "The Fire Insurance Branch of the Pennsylvania Cattle Insurance Company," to insure against fire on all kinds of merchandise, buildings or property. In pursuance of this legislation a general fire insurance business was transacted upon the mutual plan. The applications and policies were made generally in the name of "The Pennsylvania Central Insurance Company."

About April 1st 1873, the agent of the company, one Berkheimer, solicited the defendant to insure his houses and buildings in said company. Freeland testified that Berkheimer, when he solicited the insurance, said: "I have a good, sound, solvent company at Pottsville. I replied I wont insure in any mutual company; I will insure in a cash company. He then read to me different grades of insurance from a book out of his pocket, and he says, 'Go into a mutual.' I said I would rather go into a cash company. But through his persuasion I said, 'If you will agree that the company is sound and solvent, and that I shall not be called upon for an assessment, then you may insure me.' He said, 'I will guarantee that the company has $30,000 to $40,000 in advance of all liabilities that may be necessary for five years.' He also said that the company was going into banking, and would loan

money. By these representations he got my application. I thought I was signing an application for insurance, and not premium notes."

These statements were contradicted by Berkheimer.

The three notes given by Freeland, one for $48, one for $680, and another for $800, were in the following form:

$800 . Pottsville, April 1st 1873.

One day after date I promise to pay to the order of the Pennsylvania Central Insurance Company of Pottsville, Pa., such amount of money as I may from time to time be called on to pay, to increase the capital stock or cash assets of said company, not, however, exceeding the amount of $800, for value received, with release of errors.

JAMES FREELAND.

On January 12th 1874, and February 26th 1874, the company made assessments upon these notes, aggregating about thirty-three per cent., to pay alleged losses. These suits were to recover these assessments. At the trial, before Pearson, P. J., the plaintiff gave in evidence the decree of the court of Schuylkill county and the Act of Assembly above referred to for the purpose of showing its corporate existence, name, and power to insure against loss by fire. It also proved the signing of the notes and the making of the assessments thereon. The defendant then moved for a compulsory nonsuit upon the ground, inter alia, that the company had no power to make a valid contract of indemnity against loss by fire, and notes given therefor were without consideration and could not be collected.

Testimony was then offered showing the representations made by the agent as above set forth, and that defendant was induced thereby to sign the notes in suit, and that at that time there was no money in the company's treasury, and it was, in fact, indebted to the treasurer.

Defendant contended that, by reason of these false statements, his applications and notes were fraudulently procured; that neither were of any validity as against him; that he had, therefore, never become a member of the company; that, independently of this, the company had no authority to make a valid contract of insurance against loss by fire, and his notes were, therefore, without any consideration; and that there never was any such corporation as The Pennsylvania Central Insurance Company capable to contract or bring suit.

The material questions raised will be found in the assignments of error set forth hereafter. The verdicts were for plaintiff, and after judgments thereon defendant took this writ and alleged that the court erred:

I. In its answer to defendant's first and second points as follows:

[Freeland v. Pennsylvania Central Ins. Co.]

1. The Act of December 27th 1871, Pamph. L. 1872, p. 1385, creates two distinct corporations, with distinct names and powers, and is, therefore, unconstitutional and void.

2. The Act of December 27th 1871 is entitled "An act to incorporate the Pennsylvania Cattle Insurance Company," and there being no reference in the title to any other subject, the provisions of the act relating to the insurance of buildings and other property against loss by fire are unconstitutional, and the company never thereby acquired any right to insure buildings, &c., against loss by fire.

Ans. "It is urged that this is creating two corporations in one act, and even if it is not, it embraces more than one subject, which is not clearly expressed in the title. If left to my own judgment I would say that this law in substance, if not in form, creates two distinct corporations, within the prohibition of the Constitution, and also that it is very clear that the most important branch of this forked corporation is not alluded to in the title, yet it is quite as much so as the Forest County Capital case, in 3 P. F. Smith 391. But that, as also a good many more decisions, on the construction of that branch of the Constitution, has been almost uniformly condemned by the legal profession. On the 26th of February 1872, by a proceeding in the court of Schuylkill county, the name, and many of the powers of this corporation, were changed more than a year before the defendant became a member, which was the 1st of April 1873. The invalidity of a charter cannot be inquired into collaterally, and least of all by a member who has enjoyed the benefit of its privileges: Dyer v. Walker, 4 Wright 157. * *. * The title of an act need not be an index to the whole statute: Commonwealth v. Green, 8 P. F. Smith 226 ; Yeager v. Weaver, 14 Id. 425; Allegheny County Home's Case, 27 Id. 78. It matters little in the present case whether the original charter was valid, regular or otherwise, one was granted by the court of Schuylkill county, which, even if irregular, was not void, and could not be avoided collaterally."

II. The court erred in its answer to defendant's third point as follows :

3. The evidence submitted as to the change of the name to "The Pennsylvania Central Insurance Company" shows that the alleged change was never legally made; therefore the "Pennsylvania Central Insurance Company" never had any legal existence, and there can be no recovery upon the contracts on which these suits are based.

Ans. "We do not consider that the defendant is in a situation to raise the question. If it is a misnomer, it should have been pleaded in abatement ; and if the company has no legal existence, it should have been pleaded in bar. Neither one nor the other has been taken advantage of at the right time.

[Freeland *v.* Pennsylvania Central Ins. Co.]

III. The court erred in rejecting the evidence offered by defendant, the offer and ruling thereon being as follows :

It is now offered to give the record in evidence to show that after the company changed its name by the decree it failed to file a copy of the same in the auditor general's office, and therefore cannot use the name—is prohibited—under the Act of 1869, to use the name ; consequently cannot sue in that name until the law is complied with.''

(This objected to.)

PER CURIAM.—This case is on trial on the general issue. A matter of this kind must be pleaded in abatement, or in bar, and cannot be done after the general issue. It is not a plea that goes to the merits, or tends to promote justice, and therefore no amendment should be allowed, as it is more than probable that the failure to comply with this act is very general. But that is unimportant. It cannot be taken advantage of in this way. Therefore, the record is rejected, and bill sealed at defendant's request.

IV. The court erred in its answer to defendant's sixth point as follows :

5. The Act of Assembly relied upon by plaintiff, for its existence and corporate powers, having provided a statutory remedy for the collection of assessments to pay losses, viz., by issuing a warrant to its collector, who is clothed with all the powers of a duly qualified collector of county taxes ; the plaintiff cannot maintain a common-law action for such assessments, and cannot recover in these cases.

Ans. " The eighteenth section of the charter law provides, ' that when an assessment is made by either branch of the company, the board of directors shall issue their warrant for the collection of the same, to the collector, with the same power and privileges as county taxes are collected.' "

" A prior section had provided that members should be bound to pay in proportion to the losses on their deposit notes, and suits at law may be maintained by the corporation against its members, on their deposit notes, according to the assessment thereon.

" The tenth section also contemplates an action at law in such cases, and makes the amount of the assessment prima facie evidence of the sum to be collected in court.

" The whole charter law, like very many of our statutes, is incongruous and extremely contradictory, and the court must so construe them as to do the least injustice. Two remedies are here given, one by resort to an action in a court of law, after the damages or sum to be collected is assessed in proportion to the losses ; the other by the action of the company alone through its own collector. We cannot help thinking that justice is more likely to be done by the courts than by making the plaintiff both judge and executioner in its own case. The defendant would certainly have better ground

[Freeland *v.* Pennsylvania Central Ins. Co.]

of complaint if its first notice of the claim was the amount of the collection than when it has a regular proceeding at law, with full right to be heard at every step. Our construction of the statute is that both remedies are given, and the company may pursue with either, and the one elected is most for the advantage of the defend ant and best insures fair dealing."

V. The court erred in its answer to defendant's ninth point, as follows:

9. If from the evidence the jury believe that defendant was induced to sign the notes held by plaintiff, by representations of the plaintiff's agent that the company had a fund of from $30,000 to $40,000 on hand with which to meet its liabilities, and that such representations were incorrect, the notes are not binding upon defendant, and the verdict should be in his favor.

Ans. " The law would be so if there was nothing else in the case; but the jury must decide on the whole law and facts of the case as stated in the general charge. You know the general charge referred to the manner and to the declarations; also as to other persons joining, and the policies not being returned."

VI. The court erred in instructing the jury as follows, viz.:

" Mr. Berkheimer said there was nothing said about $30,000 or $40,000 for losses, but to make loans. He did not go into this plan of insurance at all, and consequently we have nothing to say about issuing a policy of that kind. We are not trying that. We have to try one case at a time. If this had come up, the question might arise as to whether this company had the right to make this kind of insurance at all; but the question here is now upon this mutual insurance, not given on the basis of cash rates, but given on the mutual rates in the ordinary form of the mutual insurance company. If nothing was said in regard to the money being applicable to the mutual rates, I think it has very little to do in the present case, because the insurance was not taken on that money. He may have taken it in that way. He may have thought this money was available; but the agent says he did not say so—that the $30,000 or $40,000 were for loans on the loan plan. I think, therefore, it has much less weight than given it by counsel in the argument. However, that is for the jury to consider. We have to take the evidence as sworn to. Does it satisfy you that in this mutual insurance this money entered into the contract with Mr. Freeland? If it did not, he cannot avail himself of it. If there for the purpose of making loans, it has no effect upon his insurance at all, for it was not to come to him in any event. * * *

"A man might naturally suppose that a company strong enough to loan-out thirty or forty thousand dollars would be a strong company otherwise. But when you draw that inference, and we would all draw that inference likely, that does not protect or help to

make safe an insurance in the mutual company, with this money in the loan company."

VII. The court erred in instructing the jury, as follows, viz.:

" There is one other matter connected directly with this, and that is this showing from the books the character of the persons who were insured; and Mr. Freeland's name was there during the year though the company was wound up before he returned his policies. It was wound up to pay off its debts, although it did not do that; but wound up so far as regards doing any businesss. * * *

" It is said that many other persons became members in the meantime; and you will have to consider how far Mr. Freeland, being a member of the company, might influence others to sign; for if a man of prominence and a man of property like him signs into a company of this kind, it would have considerable weight with his neighbors. But there is no direct proof that by Mr. Freeland's signing others were induced to sign. * * *

" But there is another matter. A man wanting to insure might look over the books, and although he could not see the policies the defendant had, he could see from the books of the company that his name was among those of A., B. or C., and he would naturally say, ' I will go in on the strength of his subscription. That tends to secure the company, and tends to secure my property.' For that reason, if a man is going to return his policies at all, he should do it promptly, and at once, and make it known to the company that he did not consider himself a member, by thus throwing up his insurance. Otherwise men are misled into the company. You ought to take into consideration, then, the influence to induce others to become members. * * *

" Were people misled by his not returning, and his having omitted to make his opinions known; and were they induced to insure themselves, and not with reference to his insurance? Men should be careful how they put their names to papers, or how they induce others to join the same companies. If you find on account of this that Mr. Freeland ought to be held liable on his subscription, then the question is, how much is he liable for?"

VIII. The court erred in its answers to defendant's 7th and 8th points, as follows:

7. The plaintiff had no authority to issue policies of insurance against loss by fire upon the stock or cash plan; and the policies issued upon said plan, were invalid, and the plaintiff had no right to make an assessment against other policy holders for the payment of their losses.

This point is answered in the negative.

8. The only losses shown to have occurred after the date of defendant's applications, being losses occurring under policies issued upon the cash plan, the defendant in this case is not bound to contribute to the payment of said losses; his notes are not

[Freeland v. Pennsylvania Central Ins. Co.]

liable to assessment therefor, and there can be no recovery of the assessments in these cases.

Ans. "The court declines to so decide. We think he is liable on the notes."

*Fleming & McCarrell*, for plaintiff in error.—We do not contend that the charter of the corporation was invalid. We admit its validity, and its power to insure cattle, but deny its power to insure buildings, &c. Its policies issued to defendant, pretending to protect him against loss of his buildings by fire, were "ultra vires," and afforded him no protection whatever. The notes given for these policies were, therefore, without consideration. The conclusion of the court that defendant had "enjoyed the benefit of its privileges" is, we submit, an assumption of the point in controversy. The only privilege which the corporation could confer, was the protection of defendant from loss of his live stock "by death, theft or accident." The defendant never enjoyed this only protection which the company could extend. Having been given no rights as against it, he owed it no duty, and was under no obligation to contribute to its treasury.

The contracts sought to be enforced here, were made by the corporation in utter disregard of the command of the statute, defining the titles under which it should make contracts, and we respectfully submit that the learned court erred in not declaring that there could be no recovery under these contracts.

The evidence offered and rejected was intended to show that the corporation had failed to comply with the positive mandate of the law, and therefore had no right to use the name in which it had contracted, and commenced its action.

Even if a plea in bar was necessary, in order to enable defendant to set up this defence, such plea had been filed, by leave of the court, before the evidence was offered. A statutory remedy having been given for the collection of the assessments, the corporation could not maintain a common-law action: Turnpike Co. *v.* Brown, 2 P. & W. 462; Dorman *v.* Turnpike Co., 3 Watts 126; Turnpike Co. *v.* Martin, 2 Jones 361; Kidder *v.* Boom Company, 12 Harris 194. The false representations of the agent avoided the contracts: Mundorff *v.* Wickersham, 13 P. F. Smith 87; Greenawalt *v.* Kohne, 4 Norris 369; Insurance Co. *v.* Wilkinson, 13 Wall. 222; Lycoming Ins. Co. *v.* Woodworth, 2 Norris 226.

The jury was permitted, without any evidence, to infer that other parties were influenced by defendant's name upon the books, to take insurance in this company, and was instructed that, if they so inferred, the defendant was liable, unless he had "promptly and at once" returned his policies.

The charter of plaintiff shows clearly that members were to give deposit notes, and that assessments were to be made thereon to

meet losses and expenses. The company, therefore, nad no right to insure without a deposit note, and the policies issued on the cash plan, were without authority and invalid.

*Guy E. Farquhar, Wallace De Witt* and *William Pearson,* for defendants in error.—As held by the court below, a member of ·a mutual insurance company is estopped from questioning the validity of its charter. Nor can the validity of a decree of court be raised in a collateral proceeding : Workingmen's Building and Loan Association *v.* Coleman, 8 Norris 428 ; Rhoads *v.* Building Association, 1 Id. 180. A misnomer of a corporation must be pleaded in abatement, and the want of an act of incorporation must be pleaded in abatement or in bar, specially : Rheem *v.* Naugatuck Wheel Co., 9 Casey 358. The company, under the provisions of its charter, clearly had the right to sue at law in addition to its special remedy. The question whether defendant was induced to insure by the representations of the agent, was one of fact for the jury, and they found against defendant.

It was shown by the books of this company that quite a large number of policies were issued by it after that issued to Mr. Freeland, and before its return. It was also shown that the latter kept his policy for one year. Did he not, in the meantime, hold himself out to all doing business with this company as a member of it ? Did he not lend to the company the assistance of his reputation as a shrewd business man and a man of wealth, in getting others to insure ? We most earnestly contend that these were questions properly left to the jury, under the evidence. The case resembles that of a person who allows himself to be held out as a partner in a firm, and lends it his name and credit ; he thus becomes liable, whether actually a partner or not : Collyer on Partnership, sect. 6.

Mr. Justice GREEN delivered the opinion of the court, June 7th 1880.

The first, second and third assignments of error may be considered together.· The suits were brought upon three promissory notes, alleged to be premium notes, given by a policy holder to an insurance company, for the purpose of recovering certain assessments made by the company for the payment of losses. The corporation was originally created by the Court of Common Pleas of Schuylkill county in November 1869, as a cattle insurance company, and was then called " The Pennsylvania Cattle Insurance Company." On September 4th 1871, the same court, on proceedings for that purpose, changed its name to " The Pennsylvania Central Insurance Company." The present actions are brought in the latter name. The power to insure property against loss by fire was conferred by an Act of Assembly passed December 27th 1871. By that act the name originally given to the company was restored and it was once

more known as " The Pennsylvania Cattle Insurance Company."
But it no♦ possessed the power to insure property against loss by
fire under an ill-conceived and incongruous provision which author-
ized it " to connect an additional branch of insurance," to be called
the " Fire Insurance Branch of the Pennsylvania Cattle Insurance
Company," and by that name to have perpetual succession, and to
sue and be sued. By the 16th section of the act the power to
insure property against loss by fire was conferred upon this branch.
We are strongly inclined to think that thereafter, all policies of
insurance on property should have been effected in that name. By
an Act approved May 10th 1871, the legislature had conferred
upon the Pennsylvania Cattle Insurance Company the same rights
and powers as were possessed by the Lykens Valley Mutual Fire
Insurance Company which was authorized to insure property
against loss by fire. On February 26th 1872, the Court of Com-
mon Pleas of Schuylkill county, made another decree changing the
name of the company back to " The Pennylvania Central Insurance
Company." The defendant's contract was made with this latter
company by that name. He now contends it ought not to be
enforced against him because the Act of December 27th 1871, con-
ferring the power to insure property was unconstitutional for two
reasons : 1st. Because it creates two distinct corporations with
separate names and different powers, and 2d. Because the title
does not indicate that the creation of a fire insurance company by
a distinct name was intended, and the legislature could not thus
create a distinct corporation or confer a power. If this were an
open question of which the defendant might take advantage, we
should be inclined to attribute great weight to it. But he is not
in such a position. It is perfectly familiar law that the invalidity
of a charter cannot be inquired into collaterally, and least of all
by a member who has enjoyed the benefit of its privileges : Dyer &
Co. v. Walker, 4 Wright 157. The violation of a charter cannot be
set up as a defence to an action on a note given in violation of the
charter : Irvine v. Lumbermens' Bank, 2 W. & S. 204. See also to
the same point : Flanders on Fire Ins. 19 ; Sands v. Hill, 42 Barb.
651 ; Dyer v. Walker, 4 Wright 157 ; Workingmen's Building
and Loan Association v. Coleman, 8 Norris 428 ; Rhoads v.
Building Association, 1 Id. 180. But the learned counsel for
the defendant reply to this that they do not question the validity
of the act ; they admit its validity, but deny the power to insure
property, and argue, hence, that such a contract is ultra vires.
This would be a good defence if it were well taken. But how is it
made out ? Simply by alleging that the legislature had not con-
ferred the power by a constitutional enactment, in other words,
repeating the objections to the *validity* of the act. A corporation
contract is ultra vires when it is beyond the powers conferred.
But here the power *was* conferred, whether rightfully or not, and

13 NORRIS—33

[Freeland *v.* Pennsylvania Central Ins. Co.]

the contract in question was within the very letter of the act. It cannot be said, therefore, that it was ultra vires within the proper meaning of that expression. If the act itself was invalid in attempting to confer the power, of course the power did not exist. But this defendant cannot be heard to make that objection, and hence the defence on this ground fails.

The defendant says further, however, that the plaintiff has sued in the wrong name, that it could only sue in the name by which it was authorized to contract for the insurance of property. This also would be a good defence, but there is only one way in which it can be interposed, to wit, by plea of misnomer in abatement. No such plea has been made, and the defendant has gone to trial under the general issue. After that it is too late to make such a a defence.

A misnomer must be pleaded in abatement: Fritz *v.* Commissioners, 5 Harris 135 ; Gray *v.* Monongahela Nav. Co., 2 W. & S. 162. Even the want of a charter or one with great irregularities must be so pleaded. If there is no charter, it must be specially pleaded in bar: Rheem *v.* Wheel Co., 9 Casey 358, 363-4; Conard *v.* Atlantic Ins. Co., 1 Pet. 450 ; Society *v.* Town of Pawlet, 4 Id. 480. And a plea in bar will not be received if pleaded after the general issue and a full preparation for trial and a hearing on the merits : Zion Church *v.* St. Peter's Church, 5 W. & S. 215. It is contended that the decree of the court of February 26th 1872, again changing the name of the company was illegal, because no fresh petition for that purpose was presented and no notice thereof was given to the auditor-general. This may well be, and if the question had come before us on appeal from that decree, it would probably have been reversed for the reasons stated. But it is not here in that way. This defence amounts to a plea of misnomer, and it is introduced in a collateral proceeding by a member of the corporation who has contracted with it in the name in which the suit is brought. It is not possible to entertain such an objection interposed in such a mode and by a person so circumstanced, for the reasons already stated. See further on this subject the case of Association *v.* Feemar, Leg. Int. of March 28th 1879, p. 124.

This disposes of the first three assignments of error.

In the fourth assignment, it is claimed that as by the statute, a special remedy for the collection of assessments was provided by means of a warrant to the collector and a summary seizure of the member's goods, no other remedy could be pursued. The remedy selected is an ordinary action at law upon the contract, in which action the defendant has a hearing in a court with a full opportunity of defence. The argument is that this kind of remedy has, in reality, been taken away, and thus that while the defendant could not be sued in a court of law, his goods could be arbitrarily taken by a warrant without previous notice, hearing or trial. We

certainly should never hold such a doctrine, unless we were absolutely compelled to do so by an irresistible necessity.　Fortunately, we are not placed in such a position here.　While it is true that the eighteenth section of the act provides that whenever an assessment is made by either branch, the board of directors shall issue their warrant for the collection of the same, it is also true that the eighth section provides that every member shall be bound to pay for all losses in proportion to the amount of his deposit note, and "suits at law may be maintained by said corporation against any of its members for the collection of said deposit notes or any assessment thereon, or any other cause relating to the business of said corporation."　Section ten also contemplates and provides for actions brought for the recovery of assessments in the courts of the Commonwealth.　It is argued that these sections are confined to the cattle insurance branch of the company, but we do not agree to that construction.　There are no express words establishing .such restriction, and on the contrary, the language of the eighth section distinctly declares that suits may be · maintained by said corporation against *any* of its members for the collection of said deposit notes or *any assessment* thereon, or any other cause relating to the business of said corporation.　The generality of this language is such that we are not at liberty to restrict it to a particular branch of the corporation, and we are of opinion that the court below was right in its determination of this question.

We see no error in the matters complained of in the fifth and sixth assignments.　The subject of the representations made by the agent was carefully reviewed by the learned judge in his charge, and was left to the jury with proper instructions, as to whether the alleged representations were made, whether they were influential in inducing the defendant to enter into the contract, and whether they were true or false in the sense that would be necessary for the avoidance of the contract.　The jury has found against the defendant on these facts, and their action cannot be reviewed here.

We do not quite perceive the relevancy of the portion of the charge complained of in the seventh assignment, but do not find any positive error in what was said, nor anything calculated to mislead the jury.　The court expressly said that "there is no direct proof that by Mr. Freeland's signing, others were induced to sign."　The question here is as to the defendant's liability for the assessments on the note given by him.　The influence of his membership in inducing others to join is not very material as to his liability, as that depends upon his written contract.　We do not see how the remarks of the court on this subject did or could affect the verdict in any improper way.

We think the court were right in their answers to the defendant's seventh and eighth points, and hence the eighth assignment of error is not sustained.

　　　　　　　　　　　　　　　　　Judgments affirmed.